UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIKA HAYASHI, a Doctor of Podiatric Medicine, | Civil Action No. 17-2558 |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | Jury Trial Demanded |
| SHUNZO OZAWA, DDS, | ECF Case |
| Defendants. | |

Plaintiff, Mika Hayashi, by way of verified complaint against defendant, Shunzo Ozawa, DDS, alleges as follows:

## OVERVIEW OF THE ACTION

1.      This is a diversity case seeking injunctive relief and money damages for defamation, brought by a podiatrist against the sole owner and operator of a public "blog" site setting forth his several entries accusing the plaintiff of being a "fake" doctor.  The defendant has also defamed plaintiff by virtue of certain correspondence sent to her former attorney, as set forth below.

## JURISDICTION AND VENUE

2.      This Court enjoys subject matter jurisdiction under 28 U.S.C. §1332(a)(1) because plaintiff and defendant are citizens of different states and the total amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.      This Court enjoys personal jurisdiction over the defendant because he has had, for several years, continuous contact with the borough of Manhattan, where he owns and operates a dental office.

4.     Venue is proper under 28 U.S.C. §1391(b)(1) because the defendant has transacted, for several years, and continues to transact business in the borough of Manhattan, where he owns and operates a dental office.

## PARTIES

5.     Plaintiff is an adult individual and New Jersey citizen with a permanent address in Demarest, New Jersey.

6.     Plaintiff is of Japanese heritage and speaks and understands fluent Japanese.  At all relevant times, plaintiff was and is a licensed podiatrist in the State of New York with her own private practice catering almost exclusively to Japanese patients.  At all relevant times, plaintiff was and is one of only two podiatrists in the tristate area with Japanese heritage and speaks and understands fluent Japanese: Unlike plaintiff, the second podiatrist is male.

7.     Defendant is an adult individual and New York citizen who owns and operates a dental office, and accepts service of process at 425 Madison Avenue, Room 403, within the City, County and State of New York.

8.     Defendant is also of Japanese heritage and speaks and understands fluent Japanese.

## THE BLOG SITE

9.     At all relevant times, defendant solely owned and operated the websites "ozawashikany.jugem.jp" and "ozawany.jugem.jp." (together, the "Blog Site").  No one but the defendant adds, archives, controls, removes and/or updates content on the Blog Site: Such content includes, among other things, the defendant's commentary about various subjects and one or more "hyperlinks," or internet or web page links to his preexisting Blog Site entries.

10.     Although its content is almost entirely in Japanese, the Blog Site remains accessible to the public at large because it is in the public domain with no conditions or restrictions on access, such as login credentials.

11.     The Blog Site has attracted and continues to attract an enormous number of followers and readers because its web address is prominently displayed in the defendant's advertisements (supposedly for his dental practice) frequently published in the two only free Japanese newspapers circulated in the New York, New Jersey and Connecticut area: While "Japion" is printed and circulated weekly, the "Daily Sun New York" ("Daily Sun") is printed and circulated daily.  Attached as ***Exhibit A*** are 3 excerpts of Japion (January 27, 2017, through February 10, 2017) and 3 excerpts of Daily Sun (February 10, 2017, through February 14, 2017), each displaying the Blog Site in big bold letters, along with the telephone numbers to defendant's 3 dental offices.  Identical or similar displays, or advertisements, by the defendant continue to this day.

12.     Both Japion and Daily Sun are extremely popular among the entire Japanese community in the tristate area because they are free and have no competition: Their readership and outreach are therefore substantial.  Japanese residents in the area who neither speak nor understand English, for instance, often resort to both newspapers, whether in hardcopy form or through their respective websites (www.ejapion.com, www.dailysunny.com), to locate Japanese-speaking professionals (such as attorneys, doctors and accountants), post and read classified ads, keep apprised of current events in the area, and find addresses for Japanese-catering supermarkets, etc.  In fact, an overwhelming number of plaintiff's present and former patients is a loyal Japion and/or Daily Sun reader (and fully aware of the defendant and his Blog Site).

13.     Oddly, as of early March 2017 and at all times relevant to this case, the Blog Site contains no content about the defendant or his dental practice and instead consists of a personal journal dating back to April 2007.  Readers are able to search content within the defendant's blog entries by key words and category, and also comment on any of the defendant's entries.  The topics of the defendant's blog posts include criticisms of various professionals, including dentists and doctors.  This lawsuit focuses on the defendant's defamatory statements about the plaintiff, a licensed podiatrist.

## THE DEFENDANT'S DEFAMATORY ACTS

14.     On April 24, 2015, the defendant posted the following content on the Blog Site:

> "It has been several years since the [plaintiff, a] 'doctor of podiatry medicine' started calling herself as doctor.  You cannot get a doctor's degree from podiatry vocational school, so I called and asked her, 'what kind of doctor are you?' a few years ago.

> She said, 'I am a doctor … and it's in the dictionary.'  I was surprised with a bitter smile. … 'You don't have a PhD, then it is a fraud to put down doctor as a title, so you must remove it as soon as possible.'

> *          *          *

> Even now, the newspaper, Japion ad states 'doctor' and remains unchanged since we last spoke.

> Well, then did she get a PhD after that?  I plan to visit [plaintiff's] office and verify her doctor certificate.  There is a law in this country that you must display a certificate in the office where everyone can see.  The certificate must be displayed to the public and you don't even need to ask to show it, so please check it out when you get a chance.  And if anyone has a chance, I urge you to report to me."

The foregoing entry, which the defendant had placed on the internet and publicized for the entire world to see even though he had never met or spoken to the plaintiff before, is attached as

*Exhibit B*.[1]   Further, the defendant's following subsequent Blog Site entries, dated within one year of the commencement of this action, specifically incorporate the foregoing Blog Site entry by virtue of one or more hyperlinks (to the defendant's April 24, 2015, entry) embedded therein: The subsequent Blog Site entries are a continuation of the defendant's apparent and unprovoked unhappiness about the podiatrist plaintiff's use of the title "doctor."[2]

15.    On September 17, 2016, the defendant posted the following content on the Blog Site:

> "Once again, another offensive post by free newspapers [Japion] regarding doctors' titles …
>
> 1.    The title, DPM is Doctor of Podiatry[.]  Even though the title is stated as Doctor, it is not a doctor[.]  But this guy, Hidetoshi Tachibana, DPM … is described as a doctor[.] (See Note 1).   This is an outrageous mistake[.]
>
> 2.    Again, there is another DPM woman [plaintiff] who calls herself as a doctor.  Even if she is a doctor[,] she is not[.]  After all, this is perjury.  You may consider it a fraud.
>
> [I]t's sad that the Japanese are deceiving the Japanese. … [B]e careful with those Japanese implications.  False information is everywhere always.  Just because they are written in published form, people tend to believe what's on those articles.
>
> Note 1: Doctor of Podiatry is a degree given at podiatry vocational school, not a medical school."

The foregoing entry is attached as *Exhibit C*.

16.    On September 21, 2016, the defendant posted the following content on the Blog Site:

---

[1] Any parenthetical references to "plaintiff" set forth in all excerpts cited herein are provided for the sake of brevity, relevance and the reader's convenience.
[2] By "clicking" on such internet hyperlinks, readers can read all of the defendant's Blog Site entries corresponding to the hyperlink.  That is, the Blog Site message or post "linking" to the defendant's prior Blog Site entry or entries incorporates the prior entry or entries by reference.

"There is a thing called Doctors' List in Japion[.]  However, please be aware that this is only a promotional list.  Be aware that only those who paid for advertisement are posted[.]  I doubt these so-called listings.

> \*      \*      \*

2.      A false title is posted:
Describing herself as a doctor even though she is not.  [Plaintiff] is only a doctor of podiatry who just graduated from podiatry vocational school (completely different from medical school), even though she claims to be a 'doctor.'"

The foregoing entry is attached as ***Exhibit D***.

17.      In November 2016, plaintiff hired a Japanese-speaking attorney, Ms. Mami Terai, who wrote the defendant a "cease and desist" letter advising him, among other things, that she strongly opposed the defendant's defamatory and malicious remarks.  On November 14, 2016, the defendant e-mailed Ms. Terai, and again defamed the plaintiff:

"Is it okay to call herself [plaintiff] a podiatric doctor?  Using a non-approved word could mislead and give the wrong idea.  In my dental office, many patients reported that they didn't know podiatrists are not doctors, and only found out later.  I'm surprised these patients haven't spoken up or took the matter to court.

> \*      \*      \*

I am not trying to insult Dr. Hayashi.  I am only seeking corrections.  Patients get the wrong information.  This may cause lawsuits, but in that case I'm going to use my litigation firm, Rubin and Herzfeld.  I have a few successful cases by them. … If this becomes a lawsuit, will Dr. Hayashi have a different lawyer since your specialty is immigration?  Anyway, it will cost a lot of money and waste time for both of us.

> \*      \*      \*

Ozawa."

The foregoing correspondence is attached as ***Exhibit E***.

18.      On February 2, 2017, while knowing that the plaintiff strongly opposed the defendant's defamatory remarks, the defendant posted the following content on the Blog Site:

"DPMs (Doctors of Podiatric Medicine) are graduates of podiatry vocational school, which is completely different from medical school.  Therefore, DPMs are completely different from real doctors.

\*      \*      \*

3.  Some DPMs call themselves a doctor.  Based on this doctor (plaintiff), a doctor is a doctor.  Is this true?  Then dentists and vets are also considered doctors, right?  You cannot receive a doctors degree at podiatry vocational school."

The foregoing entry is attached as ***Exhibit F***.

19.     Plaintiff's concerns about the defendant's totally-unprovoked defamatory and offensive remarks, including those published on the internet, cannot be overstated.  None of the defendant's foregoing statements was published under any conceivable privilege and with any lawful authorization.  Those concerns are likely shared by any and all podiatrists in the State of New York, if not the entire world.

20.     As of February 28, 2017, the defendants' defamatory internet entries about the plaintiff remain active and retrievable on the Blog Site, for the entire world to see, and not just readers of Japion and/or Daily Sun.  Despite plaintiff's numerous attempts to persuade the defendant to remove his defamatory messages, including a *second attempt* by letter sent to him March 17, 2017, by plaintiff's undersigned counsel, he has failed to do so for undisclosed reasons.  Accordingly, punitive damages against the defendant are warranted.  Further, as explained below, the defendant's egregious conduct and unlawful statements about and concerning the plaintiff were published with malice with the unmistakable goal of causing harm to the plaintiff, her reputation and her livelihood and crippling her private podiatry practice.

### FIRST CAUSE OF ACTION:
**Defamation/Defamation per se**

21.    Plaintiff repeats and realleges all of the allegations set forth above as if more fully set forth herein.

22.    The defendant's foregoing defamatory acts on the Blog Site constitute false and defamatory statements of fact because the "Doctor" (of Podiatric Medicine) title is professionally accepted, widely used and common knowledge.  In fact, the American Podiatric Medical Association -- consisting of podiatrists across the entire country -- makes clear that all podiatrists are, in fact, "doctors":



Home » Education & Professional Development

## What is a Podiatrist?

**Learn More About Today's Podiatrist**

**What Is a Podiatrist?**

A podiatrist is a doctor of podiatric medicine (DPM), also known as a podiatric physician or surgeon. Podiatrists diagnose and treat conditions of the foot, ankle, and related structures of the leg.

**What Are the Qualifications of a Podiatrist?**

Podiatrists are the most qualified doctors to care for your feet. They complete four years of training in a podiatric medical school and three years of hospital residency training. This training is similar to that of other doctors.



Podiatrists can specialize in many fields, including surgery, sports medicine, wound care, pediatrics (children), and diabetic care.

23.    Also, New York law defines the "practice of the profession of podiatry" as:

> "diagnosing, treating, operating and prescribing for any disease, injury, deformity or other condition of the foot, and may include performing physical evaluations in conjunction with the provision of podiatric treatment. For the purposes of wound care however, the practice of podiatry shall include the treatment of such wounds if they are contiguous with wounds relating, originating or in the course of treatment of a wound on the foot within the podiatric scope of practice. Wound

> care shall not, however, extend beyond the level ending at the distal tibial
> tuberosity. The practice of podiatry may also include diagnosing, treating,
> operating and prescribing for any disease, injury, deformity or other condition of
> the ankle and soft tissue of the leg below the tibial tuberosity if the podiatrist has
> obtained an issuance of a privilege to perform podiatric standard ankle surgery or
> advanced ankle surgery in accordance with section seven thousand nine of this
> article. Podiatrists may treat traumatic open wound fractures only in hospitals, as
> defined in article twenty-eight of the public health law."

N.Y. Educ. Law §7001(1).

24.     In order to qualify for a podiatrist license and practice podiatry, an applicant must

possess have "received an education, including a doctoral degree in podiatry."  N.Y. Educ. Law

§7004.

25.     Similarly, New York law defines the "practice of medicine" as "diagnosing,

treating, operating or prescribing for any human disease, pain, injury, deformity or physical

condition."  N.Y. Educ. Law §6521.  Therefore, to the extent the medical "doctor" title includes

or implies the "diagnosing, treating, operating and prescribing for any disease [or] injury,"

podiatrists and physicians alike can, correctly, use the "doctor" title and be labeled as "doctors."

26.     Accordingly, the defendant's Blog Site entries and remarks to plaintiff's former

attorney are entirely false and absolutely incorrect: Podiatrists, such as the plaintiff, are not

"fake" doctors, no matter how the word/title "doctor" is defined.  Nor does the suggestion --

podiatrists are not *real* doctors -- have any truth in fact or law.

27.     The defendant's posts on the Blog Site and other defamatory remarks specifically

identify the plaintiff and concern her profession and livelihood as a licensed doctor of podiatric

medicine.  Furthermore, the nature of defendant's statements tends to injure any similarly-

situated doctor in his or her business trade or profession because no reasonable patient would

solicit or visit a "fake" doctor, or one whose use of a certain title is considered "perjury" or

"fraud."

28.     The defendants' foregoing Blog Site entries and other defamatory remarks were published to the entire world, via the Blog Site hosted on the internet, or at least one third-party, thus causing the plaintiff to suffer immeasurable damages.  (Although her damages are presumed by virtue of the defendant's defamatory statements injuring plaintiff's business trade or profession, plaintiff in fact has suffered substantial damages.)

29.     Plaintiff has lost, and continues to lose business in her podiatry practice as an inevitable result of the defendant's defamatory Blog Site posts.  Many of plaintiff's existing patients have left her practice and sought podiatric care elsewhere.  Plaintiff knows that her business losses are a result of the defendant's defamatory statements because she continuously receives inquiries from existing and prospective patients about the defendant's Blog Site entries about her.  These patients include those traveling all the way from Japan, such as professional athletes seeking specialist podiatric care.

30.     At all relevant times, the defendant expected and knew the plaintiff would suffer business losses as a direct result of his foregoing Blog Site entries: After all, the defendant had always known about the enormous readership of the foregoing Japanese newspaper publications and the substantial likelihood, or inevitability, that readers would resort to such publications to locate and hire a (Japanese-speaking) podiatrist, among other things.  The defendant's knowledge and intentions are evidenced by virtue of his own advertisement of the Blog Site, which appears conspicuously in those very publications.  Nothing but malice and an apparent hatred for podiatrists inspired, fueled and motivated the defendant in publishing his unlawful statements about the plaintiff (and any podiatrist using the "doctor" title in the conduct of his or her occupation, trade or profession).

31.     At all relevant times, the defendant took no reasonable steps to verify his wild accusations and false statements about the plaintiff before publishing them to third parties: With a complete reckless disregard for the plaintiff, her profession and her livelihood, the defendant published his foregoing absurd statements, for the entire world to see, while knowing that their inflammatory nature would not only offend the plaintiff but also expose her to public contempt, hatred, ridicule, aversion or disgrace.

32.     The defendant also made and published his foregoing false statements with the full intention of discrediting not just the plaintiff in the conduct of her occupation or profession, but also the entire podiatrist community at large.  The defendant's culpable mental state is also evidenced by virtue of his incendiary comments directed at each and every podiatrist within the State of New York (and beyond) who -- rightfully and legally -- use the title "doctor" in the conduct of their trade, occupation or profession: The defendant's egregious and malicious conduct presents a matter of public concern, and was motivated by a completely unprovoked intention to induce an evil or unsavory opinion of the plaintiff (and all other podiatrists) in the minds of the podiatric patient community at large.

33.     As a direct, inevitable result of the defendant's unlawful actions and defamatory remarks and Blog Site posts, any rudimentary internet search for the plaintiff's name, in Japanese, will turn up the defendant's foregoing Blog Site entries.  "Yahoo," "Google" and "Bing" search engine results dated February 15, 2017, are annexed as ***Exhibit G***: The results contain internet links and refer readers to the defendant's foregoing Blog Site entries.

34.     Furthermore, plaintiff has been receiving, and continues to receive, much fewer calls and inquiries from prospective patients.  Plaintiff's "bottom line" has been deteriorating, all because of absurd online messages posted by someone whom plaintiff has never known.

## SECOND CAUSE OF ACTION:
### Intentional Infliction of Emotional Distress

35.     Plaintiff repeats and realleges all of the allegations set forth above as if more fully set forth herein.

36.     By virtue of his unwarranted, unprovoked unlawful conduct, including his defamatory remarks and statements published for the world to see and question the defendant and her hard-earned credentials and livelihood, the defendant has engaged in extreme and outrageous conduct.  The extent of such unacceptable conduct cannot be overstated by virtue of the defendant's professional license to practice dentistry and treat patients: The defendant was and is well aware of the profound effect which his ridiculous, absurd words would have on any licensed professional who sees and treats patients for a living.

37.     At all relevant times, the defendant's absurd, baseless defamatory remarks serve no discernible purpose other than to belittle, hurt, denigrate and tarnish the plaintiff, her good name and her professional reputation.  Prior to the defendant's unprovoked behavior towards the plaintiff, as alleged herein, the parties shared no personal or professional relationship whatsoever.  *Plaintiff did not know the defendant at all, nor did the plaintiff ever speak, meet or even see the defendant before.*  Accordingly, at all relevant times, the defendant intended to cause plaintiff to suffer severe emotional distress, or at least disregarded the obvious, substantial probability of causing such emotional distress.

38.     Plaintiff has suffered injuries and damages, including severe emotional distress, medical, psychological and/or psychiatric treatment for mental anxiety, stress, inability to sleep without medication, and significant challenges in performing routine family and household tasks and balancing them with daily job duties.  Today, plaintiff fears for her safety as a result of the defendant's unprovoked, bizarre behavior, and his apparent mental instability.

39.     At all relevant times, plaintiff's foregoing injuries and damages were brought about as a direct, proximate and inevitable result of the defendant's unlawful conduct, including his disparaging remarks and defamatory statements and words.

40.     At all relevant times, the defendant engaged in such extreme and outrageous conduct after having been warned not to continue his hurtful Blog Site entries, and told about the plaintiff's injuries arising therefrom.  Yet the defendant persisted and, as of March 2017, shows no sign of stopping for reasons still unknown to the plaintiff.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, plaintiff respectfully requests the Court to enter judgment as follows:

(1)     An Order compelling the defendant to remove, permanently, any and all commentary, messages, remarks and/or statements -- authored/posted by the defendant on the internet or any public forum (including the Blog Site), whether directly or indirectly -- defaming the plaintiff or her podiatry practice, questioning her credentials and licensure(s), and/or otherwise casting aspersions on her and her professional reputation.

(2)     An Order permanently barring the defendant ever from (a) posting or sharing on any public forum (including the Blog Site), and (b) disclosing to or sharing with any third-party, whether directly or indirectly, any and all commentary, messages, remarks and/or statements defaming the plaintiff or her podiatry practice, questioning her credentials and licensure(s), and/or otherwise casting aspersions on her and her professional reputation.

(3)     An Order permanently barring the defendant ever from contacting the plaintiff or her podiatry practice for any reason, whether directly or indirectly.

(4)     An Order awarding damages in excess of $500,000.00.

(5)     Attorneys fees, litigation expenses, costs and punitive damages no less than $1 Million.

Dated:  New York, New York
        April 9, 2017

/s/ *Peter Y. Lee*

_____
PETER Y. LEE, ESQ.

60 East 42nd Street, Suite 1101
New York, New York 10165
(212) 808-0716 Telephone
(212) 808-0719 Facsimile

*Attorney for Plaintiff, Mika Hayashi,*
*a Doctor of Podiatric Medicine*

# VERIFICATION

STATE OF NEW JERSEY   )
                      )  ss.
COUNTY OF BERGEN      )

I, Mika Hayashi, of full age, hereby certify as follows:

1. I am the plaintiff in this case.

2. I have read the foregoing complaint and know the contents thereof.

3. The contents are true to my own knowledge except as to matters therein stated to be

alleged upon information and belief, and as to those matters I believe them to be true.

By: _____
      Mika Hayashi
      A Doctor of Podiatric Medicine

Sworn to and subscribed before me
this 8th day of Apil 2017

_____

PETER Y. LEE
An Attorney at Law of
the State of New Jersey
with Notarial Powers