UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MIKA HAYASHI, a Doctor of Podiatric.          17-cv-2558 (AJN)
Medicine,

                             Plaintiff,

       -against-

SHUNZO OZAWA,   DDS

                        Defendant
-----------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED VERIFIED COMPLAINT

# TABLE OF CONTENTS

Page(s)

Table of Authorities ........................................................................................................ ii

Preliminary Statement .................................................................................................... 1

Facts ................................................................................................................................ 1

Argument ........................................................................................................................ 6

    1.    The Verified Complaint Fails to State a Cause of Action ........................... 6

        A.    Standard of Review under Rule 12(b)(6) ......................................... 6

        B.    Plaintiff Has Failed to State a Claim for Defamation ..................... 7

            i.    The Alleged Defamatory Statements Are Substantially True ............................................................... 9

            ii.    The Blog Posts Are Protected Opinions ........................... 12

        C.    Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress .................................................. 15

Conclusion ..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allaire Corp. v. Okumus*,
   433 F.3d 248 (2d Cir. 2006)................................................................6

*Aronson v. Wiersma*,
   65 N.Y.2d 592, 493 N.Y.S.2d 1006 (1985) ................................................8, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)............................6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)............................6

*Borawski v. Abulafia*,
   985 N.Y.S.2d 284, 117 A.D.3d 662 (2d Dep't 2014) ................................16

*Brahms v. Carver*,
   33 F.Supp.3d 192 (E.D.N.Y. 2014) ........................................................12

*Brown v. Sears Roebuck & Co.*,
   746 N.Y.S.2d 141, 297 A.D.2d 205 (1st Dep't 2002) ................................16

*Celle v. Filipino Reporter Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000).............................................................7, 8

*Chanko v. American Broadcasting Cos., Inc.*,
   27 N.Y.3d 46 (2016) ....................................................................15, 16

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014)..............................................................14

*Darby v. Cohen*,
   101 Misc.2d 516 (Sup. Ct. 1979) .........................................................11

*Dillon v. City of New York*,
   261 A.D.2d 34 (1st Dep't 1999) .....................................................13, 16

*Ellias v. Rolling Stone LLC*,
   197 F.Supp.3d 383 (S.D.N.Y. 2016).......................................................8

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   669 F. Supp. 2d 405 (S.D.N.Y. 2009)..................................................7, 8

*Galanova v. Safir*,
    29 N.Y.S.3d 459, 138 A.D.3d 686 (2d Dep't 2016) ...................................................12

*Gargiulo v. Forster & Garbus Esqs.*,
    651 F. Supp. 2d 188 (S.D.N.Y. 2009) ...........................................................................7

*Goulb v. Enwuire/\Star Grp., Inc.*,
    89 N.Y.2d 1074 (1997) ..................................................................................................8

*Gross v. New York Times Co.*,
    82 N.Y.2d 146 (1993) ..................................................................................................12

*Guccione v. Hustler Magazine, Inc.*,
    800 F.2d 298 (2d Cir. 1986) .........................................................................................9

*Harville v. Lowville Cent. School Dist.*,
    667 N.Y.S.2d 175, 245 A.D.2d 1106 ..........................................................................16

*Holy Spirit Assn. for Unification of World Christianity v. New York Times
    Co.*,
    49 N.Y.2d 63 (1979) .....................................................................................................8

*Howell v. New York Post Co.*,
    81 N.Y.2d 115 (1993) ............................................................................................15, 16

*Idema v. Wager*,
    120 F. Supp. 2d 361 (S.D.N.Y. 2000) ...........................................................................7

*Immuno AG v. Moor-Jankowski*,
    77 N.Y.2d 235 (1991) ..................................................................................................12

*James v. Gannett Co.*,
    40 N.Y.2d 415, 386 N.Y.S.2d 871 (1976) .....................................................................8

*Karedes v. Ackerley Group, Inc.*,
    423 F.3d 107 (2d Cir. 2005).............................................................................................7

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997)...........................................................................................8

*Mr. Chow of New York v. Ste. Jour Azur S.A.*,
    759 F.2d 219 (2d Cir. 1985)..........................................................................................12

*Murphy v. American Home Prods. Corp.*,
    58 N.Y.2d 293 (1983) ..................................................................................................15

*Papasan v. Allain*,
    478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).................................................7

*Penn Warranty Corp. v. DiGiovanni,*
  10 Misc.3d 998 (N.Y. Cty. 2005) ................................................................13

*People v. Dr. Scholls Foot Comfort Shops,*
  277 N.Y. 151 (1938) ......................................................................................11

*Printers II, Inc. v. Professionals Publishing, Inc.,*
  784 F.2d 141 (2d Cir. 1986)..........................................................................9

*Qureshi v. St. Barnabas Hosp. Ctr.,*
  430 F. Supp. 2d 279 (S.D.N.Y. 2006)......................................................8, 12

*Riel v. Morgan Stanley,*
  No. 06 Civ. 524, 2007 U.S. Dist. LEXIS 11153, 2007 WL 541955
  (S.D.N.Y. Feb. 16, 2007).................................................................................7

*Roth v. Jennings,*
  489 F.3d 499 (2d Cir. 2007)............................................................................7

*Sandals Resorts Int'l Ltd. v. Google, Inc.,*
  925 N.Y.S.2d 407, 86 A.D.3d 32 (1st Dep't 2011) ......................................13

*Thomas H. v. Paul B.,*
  18 N.Y.3d 580 (2012) ...................................................................................12

*Versaci v. Richie,*
  816 N.Y.S.2d 350, 30 A.D.3d 648 (3d Dep't 2006) .....................................13

## Other Authorities

Fed. R. Civ. P. 12(b)(6).............................................................................1, 6, 7

## Preliminary Statement

Defendant Shunzo Ozawa, DDS respectfully submits this Memorandum of Law in support of his motion pursuant to Fed. R. Civ. P. 12(b)(6) dismissing plaintiff's Amended Verified Complaint in its entirety for failure to state a cause of action.

This action should be dismissed because, as discussed more fully below, the Amended Verified Complaint fails to allege facts sufficient to maintain causes of action for defamation or intentional infliction of emotional distress.

## Facts

This purported diversity action seeking damages for defamation and intentional infliction of emotional distress arises from plaintiff's claim that defendant has made allegedly defamatory statements on an internet blog and in one e-mail regarding plaintiff's use of the term "doctor." The blog and e-mail were both written entirely in Japanese. The alleged damages are claimed to be plaintiff's "business losses" as a result of defendant's statements, as well as plaintiff's claims of emotional distress.

Plaintiff filed a Verified Complaint on April 10, 2017. Defendant moved to dismiss that complaint by motion dated July 13, 2017. Plaintiff thereafter indicated that she intended to file an Amended Complaint and did so on August 1, 2017. The Amended Verified Complaint fails to address the issues raised in defendant's initial motion to dismiss. The initial motion to dismiss was based on the failure to add a necessary party and failure to state a cause of action for either defamation or intentional infliction of emotional distress. While this Court has ruled that it possesses subject matter jurisdiction, the Amended Verified Complaint does not cure the additional defects in the original Complaint.

The Amended Verified Complaint refers to seven blog posts allegedly made by defendant. Plaintiff also alleges that statements made in an e-mail from defendant to plaintiff's prior counsel are defamatory. The allegedly offending blog posts are annexed as exhibits to the Amended Verified Complaint in Japanese along with certified translations. Plaintiff has excerpted English translations of the blog posts in the Amended Verified Complaint.[1] The excerpts as posted are incomplete and include paraphrasing and/or substitution of words as identified by the use of brackets and parentheses in the translations. The Amended Verified Complaint references missing portions of the blog using ellipses and spacing. When reviewing the complete posts as annexed as exhibits, the context of the posts makes it apparent that none of the blog posts are defamatory.

The allegedly defamatory blog posts indicate that defendant has raised concerns over plaintiff's use of the Japanese word for doctor to refer to herself, a doctor of podiatry. The first allegedly defamatory blog post, dated September 17, 2016, states that a Japanese language newspaper includes a reference to another podiatrist (not plaintiff) in which defendant allegedly states that even if a doctor of podiatry has the title of doctor, "they are not doctors (MD)." The Amended Verified Complaint also alleges that the same post refers to plaintiff and states "Likewise, another DPM, a woman (Mika Hayashi) also calls herself a doctor. Even if she is a 'doctor' (doctor), she is not a doctor. This is also perjury. It might even be considered a fraud." The blog post allegedly goes on to state "[I]t's sad that Japanese are deceiving the Japanese." Finally with respect to

---

[1] For purposes of this motion only, defendant will treat the translations included in the Verified Complaint as true and accurate. Defendant reserves the right to challenge the accuracy of the translations at a later time. Within this Memorandum, references to plaintiff's allegations of what is written in the blog are placed in quotations to indicate that these are only plaintiff's allegations and not what is actually in the blog.

the September 17, 2016 blog post, the Amended Verified Complaint alleges that it states,

"p.s. [I]f as she says, a doctor is a person with a doctorate (or a doctor), then dentists,

veterinarians, and chiro[practic] doctors, every person with title of doctor, would be a

person with a doctorate.  What kind of character/personality does a woman who publishes

such erroneous title possess?  If one has the least bit of decency (common sense), isn't it

true that she should be publishing only a title with the same meaning given in English to

the title 'doctor'?  You can't just use your own translation, right?"

The second blog post in question is dated September 21, 2016.  The Amended

Verified Complaint alleges that the blog states that the doctors' list located in a Japanese

newspaper is a promotional list and those who paid to be part of the list are on it.   The

Verified Amended Complaint alleges that the blog reads as follows:

> "2. Erroneous titles are included: Stating that she is a doctor, even though she is not a doctor (Mika Hayashi).  Even if she is a doctor, she is a doctor of podiatry [w]ho only graduated from a podiatry school (completely different from medical school).  Even though she is not a doctor (MD), why is it that the title of doctor appears in print? [I] also discovered a person (Tachibana) who, even though he is neither a person with a doctorate nor a doctor, is described as such.  This person too holds the title of doctor, but is neither a person with a doctorate (Ph.D.) nor a doctor (MD), just a DPM.  Is this the reckless action of this [news]paper?  Or, is it the perjury of these two people?  Or, is this the individuals' own misapprehension, [in other words] the lowest level of self-perception?"

The third complained of blog post, dated February 2, 2017, allegedly states:

> "A podiatry doctor is sometimes being described with such titles as 'doctor' and 'person with a doctorate.'  People may think that the doctor who is being denoted 'doctor' is a doctor, that is, a medical doctor, a doctor who has gone through medical school.  However, a podiatry doctor is not a doctor who has gone through and graduated from medical school.

> Doctors of podiatric medicine … are totally different from so-called doctors who have gone through medical school.

> 3. There is even a podiatry doctor who calls [herself] a person with a doctorate.  The doctor says, 'A doctor is a person with a doctorate.'

Really?  If that's true then dentists and veterinarians and anybody ends up being a person with a doctorate, right?

p.s. Podiatry is an academic field/area not recognized in Japan. Thus, in Japan, a podiatry doctor who received the title of doctor … in America would not be authorized as doctor.  Much less would they be recognized as a person with a doctorate.

It's probably fine for a podiatry doctor to be called 'doctor' in the world of podiatry.  But [you] should note that s/he is not a doctor in a medical association."

The Amended Verified Complaint also alleges that a blog post dated February 4, 2017 is in some way defamatory despite the fact that the post, as alleged, does not reference plaintiff in any way.  In fact, the post allegedly merely states "Japan is convenient since you can call [someone] a doctor if you deal with healthcare.  However, in this country [United States], unless it is a person who studied medicine and has a MD, you must not call yourself a doctor."  The sixth allegedly offending blog post, dated February 13, 2017, merely discusses defendant's state of mind when he wrote certain posts.

According to the Amended Verified Complaint, the blog post on June 3, 2017 states:

[T]he word, the title, 'doctor' is English … But given that this is not a title recognized by the government of Japan, is it correct to call oneself this in Japanese? … According to the dictionary, the translation is 'podiatric doctor, podiatric surgeon.'  [I]t is a title in podiatry, which is not recognized in Japan, and for which no definition, such as a Japanese-language title, exists.

[T]he problem is that if a podiatry doctor claims to be a doctor or person with a doctor or the like, this could cause misunderstanding for Japanese people in general.

p.s. There are no podiatry departments in medical schools. Podiatry is not part of medical school.  Podiatry has no affiliation with medical school.  They are schools that exist in a position far removed from medical school.

4

Finally, plaintiff has posted a blog post dated June 10, 2017 which has nothing to do with podiatry, plaintiff or anything else related to this case. It instead discusses dentists. The reasons for this post being part of the Amended Verified Complaint are unclear.

Plaintiff also alleges that she was defamed by defendant's response to a cease and desist letter sent by plaintiff's former counsel. That response asked "Is it okay to call herself a podiatric doctor? Using a non-approved word could mislead and give the wrong idea. In my dental office, many patients reported that they didn't know podiatrists are not doctors… I am not trying to insult Dr. Hayashi. I am only seeking corrections…"

These posts are not only not defamatory, they are clearly either true on their face or express an opinion held by defendant. Each of the posts makes clear that plaintiff is a "doctor of podiatry." There is no dispute that this statement is true. Nor is there any dispute as to the fact that plaintiff attended podiatry school and not medical school. The posts in question really address the interpretation of when it is appropriate to use the Japanese word for doctor, without qualifying such term with additional words such as "of podiatry" or "of dentistry". The posts make clear that they were written in an effort to explain the differences between the use of the word doctor in Japanese and English as it relates to podiatrists, veterinarians or dentists. To interpret the posts as indicating that defendant was trying to state that plaintiff is not a doctor of podiatry would require a tortured interpretation of the words as written. As defendant makes clear, he believes that podiatrists, veterinarians and dentists should all qualify their use of the Japanese word for "doctor." Defendant Ozawa, a dentist, is putting himself in the same category as plaintiff

with respect to use of the term doctor. Such statements are not defamatory and clearly are not outrageous.

**Argument**

**1.      The Verified Complaint Fails to State a Cause of Action**

**A.      Standard of Review under Rule 12(b)(6)**

This case must be dismissed because the Amended Verified Complaint fails to state a cause of action for either defamation or intentional infliction of emotional distress. Plaintiff has alleged causes of action sounding in defamation and intentional infliction of emotional distress. Neither cause of action can be sustained based on the allegations of the Amended Verified Complaint, even assuming all of those allegations are true and affording plaintiff all inferences in her favor.

In order to survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim meets this standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw [ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted). Despite this fact, the court does not have to apply this rule to legal conclusions or conclusory statements. *Iqbal*, 129 S.Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (noting that a court is "not bound to accept as true a legal conclusion couched as a

6

factual allegation" (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.

Ed. 2d 209 (1986)).

**B.     Plaintiff Has Failed to State a Claim for Defamation**

In determining the sufficiency of a claim under Rule 12(b)(6) the court is limited

to the complaint and documents attached thereto or incorporated by reference. *Roth v.*

*Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). In defamation actions, this includes the

documents containing the allegedly defamatory statements. *See Fuji Photo Film U.S.A.,*

*Inc. v. McNulty*, 669 F. Supp. 2d 405, 414 n.52 (S.D.N.Y. 2009) (citing *Gargiulo v.*

*Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 190 (S.D.N.Y. 2009) and *Riel v. Morgan*

*Stanley*, No. 06 Civ. 524, 2007 U.S. Dist. LEXIS 11153, 2007 WL 541955, at *4, *8

(S.D.N.Y. Feb. 16, 2007)).

"Defamation is the injury to one's reputation either by written expression, which is

libel, or by oral expression, which is slander." *Idema v. Wager*, 120 F. Supp. 2d 361, 365

(S.D.N.Y. 2000). "Under New York law, a plaintiff must establish five elements to

recover in libel: (1) a written defamatory statement of fact concerning the plaintiff; (2)

publication to a third party; (3) fault (either negligence or actual malice depending on the

status of the libeled party); (4) falsity of the defamatory statement; and (5) special

damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporter*

*Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). A defamatory statement is one that

exposes the plaintiff "to public hatred, shame, obloquy, contumely, odium, contempt,

ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of

one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and

friendly intercourse in society.'" *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d

Cir. 2005) (quoting *Celle*, 209 F.3d at 177). "A statement that tends to injure another in

his or her trade, business or profession is defamatory per se." *Fuji Photo Film U.S.A.*, 669

F. Supp. 2d at 411 (internal quotation marks omitted).

 "Whether particular words are defamatory presents a legal question to be resolved

by the court[s] in the first instance." *Celle*, 209 F.3d at 177 (quoting *Aronson v. Wiersma*,

65 N.Y.2d 592, 493 N.Y.S.2d 1006 (1985)). As the Second Circuit has explained, it is

ultimately "the responsibility of the jury to determine whether the plaintiff has actually

been defamed; however, a threshold issue for resolution by the court is whether the

statement alleged to have caused plaintiff an injury is reasonably susceptible to the

defamatory meaning imputed to it." *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir.

1997) (citing *James v. Gannett Co.*, 40 N.Y.2d 415, 386 N.Y.S.2d 871, 875

(1976)) (internal citation omitted). Words that are not "reasonably susceptible of

defamatory meaning" are not actionable. *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F.

Supp. 2d 279, 287 (S.D.N.Y. 2006) (citation omitted).

 In determining whether statements are defamatory, the Court should interpret the

allegedly offending statements as they would be commonly understood and should

neither strain to find the least offensive meaning, nor interpret the statements in their

most negative light to find defamation. *Celle*, 209 F.3d at 177; *Qureshi*, 430 F.Supp.2d at

287 (citations omitted); *Holy Spirit Assn. for Unification of World Christianity v. New

York Times Co.*, 49 N.Y.2d 63, 68 (1979) ("the language used should not be dissected and

analyzed with a lexicographer's precision"); *Ellias v. Rolling Stone LLC*, 197 F.Supp.3d

383, 393 (S.D.N.Y. 2016) ("Words 'cannot be made [defamatory] by a strained or

artificial construction.'" (quoting *Goulb v. Enwuire/\Star Grp., Inc.*, 89 N.Y.2d 1074,

1076 (1997)).  The truth of the matter asserted is an absolute defense to a claim of

defamation. *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 300 (2d Cir. 1986).  The

defense of truth does not require that the statement be absolutely true, but only that it be

substantially true.  *Id.*  As such, only the substance of a challenged statement must be true,

not the accuracy of every statement contained therein. *Printers II, Inc. v. Professionals*

*Publishing, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986).

### i.   The Alleged Defamatory Statements Are Substantially True

Here, an examination of the allegedly defamatory statements reveals that they are,

in fact, substantially true as a matter of law.  Plaintiff has not identified which portions of

the quoted blog are alleged to be false.  However, it is clear from the pleading that

plaintiff's contention centers on statements made by defendant that plaintiff is a podiatrist

and therefore should not use the word "doctor" to refer to herself.[2]  However, when read

in the full context of the allegedly offending posts, it is clear that defendant was

distinguishing between a medical doctor and a doctor of another kind.  In fact, plaintiff

admits that the blog posts are susceptible to a reasonable interpretation that defendant's

intention was to state that podiatrists are neither medical doctors nor doctors of

philosophy (Amended Verified Complaint paragraph 21).  In the first blog post, plaintiff

alleges that defendant said, "The title, DPM is Doctor of Podiatry.  Even though the title

is stated as Doctor, it is not a doctor… Even if she is a doctor, she is not…"  The context

is clear.  Defendant is distinguishing types of doctors.  He is not stating that plaintiff is

not a doctor of podiatry, in fact, he says explicitly that she is.

---

[2] As discussed above, the blog in question is written in Japanese.  Plaintiff has provided purported
translations within the Amended Verified Complaint.  Although defendant does not agree that the
translations are completely accurate, for purposes of this motion we will assume that the translations are
accurate.  The word "doctor" is placed in quotes here as that is plaintiff's interpretation of the Japanese
word contained in the blog, though the word may be susceptible to other English translations, such as
"physician."

The second blog post allegedly states, "Even if she is a doctor, she is a doctor of podiatry [w]ho only graduated from a podiatry school (completely different from medical school)." Here defendant makes clear that he is distinguishing doctors of podiatry from medical doctors, stating clearly that plaintiff did graduate from podiatry school. There is no reasonable interpretation of this statement that would result in a belief that it is a false or defamatory statement.

The e-mail to plaintiff's former attorney states, "So what about DPM's? Are they doctorate (holders)? Based on the dictionaries, it's an acceptable translation. But I don't think it is actually being used. …I'm just saying that using terminology of DPM that is not recognized in Japan or a doctorate (degree), by choosing one definition from the dictionary, can mislead the facts." Again, the e-mail clearly is an attempt to avoid misunderstandings about the use of the Japanese word that here is translated as "doctor." The e-mail goes on to say "I am not trying to insult Dr. Hayashi."

The third blog post allegedly says, "People may think that the doctor who is being denoted 'doctor' is a doctor, that is, a medical doctor, a doctor who has gone through medical school. However, a podiatry doctor is not a doctor who has gone through and graduated from medical school." It further allegedly states, "Podiatry is an academic field/area not recognized in Japan. Thus, in Japan, a podiatry doctor who received the title of doctor … in America would not be authorized as a doctor. Much less would they be recognized as a person with a doctorate. It's probably fine for a podiatry doctor to be called 'doctor' in the world of podiatry." This post is clearly not defamatory in any way. It states simple facts regarding the interpretation of a Japanese word and is an attempt to

avoid confusion with respect to the use of the word doctor.  Plaintiff does not even allege what about this post is defamatory or what is false about this post.

Plaintiff goes on to allege that, regardless of the interpretation of the language, it is "not good for plaintiff or any podiatrist's reputation and business." (Amended Verified Complaint paragraph 24).  Whether this allegation is true or not, it cannot be the basis for a defamation claim.  It is merely a statement that plaintiff does not like what defendant is saying.

Each of the complained of statements, when taken in proper context, is completely true.  Plaintiff admits that she is a podiatrist and attended podiatry school, not "medical" school.  A DPM degree is a separate degree from an MD (medical doctor) or Ph.D (doctor of philosophy).  In fact, New York state courts have consistently found that Doctors of Podiatry are not the same as medical doctors. *See People v. Dr. Scholls Foot Comfort Shops*, 277 N.Y. 151 (1938) (podiatry is not a branch of medicine); *Darby v. Cohen*, 101 Misc.2d 516, 517 (Sup. Ct. 1979) (podiatry is not now and has never been considered a branch of medicine).  The blog posts as alleged in the Verified Complaint clearly state that plaintiff is a "doctor of podiatry" or "DPM," but they also make a distinction between such titles and the use of the Japanese word for doctor on its own.  Any reasonable reading of these posts would lead the reader to understand that defendant is stating that plaintiff is a doctor of podiatry, but that differs from a medical doctor or PhD.  For these reasons, the Verified Complaint should be dismissed based on the fact that the statements alleged to be defamatory, taken in their proper context, are clearly substantially true and not defamatory in nature.

ii.     **The Blog Posts Are Protected Opinions**

In addition to their truth, the statements complained of clearly represent defendant's opinion regarding the use of the Japanese word for "doctor" to describe podiatrists, as well as dentists and veterinarians.  Expressions of opinion are protected from claims of defamation. *Qureshi*, 430 F.Supp.2d at 288.  In determining whether a statement is an expression of opinion, New York Courts consider three factors: 1) whether language has a precise meaning; 2) whether the statements are capable of being proven true or false; and 3) whether the context of the statement would signal readers that what is being expressed is an opinion rather than a fact. *Id.* (quoting *Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993)).  Of these elements, courts have regularly found that context is the vital element to determining whether a statement is fact or opinion. *Brahms v. Carver*, 33 F.Supp.3d 192, 199 (E.D.N.Y. 2014) ("context is key"); *Thomas H. v. Paul B.*, 18 N.Y.3d 580, 585 (2012) ("Context, therefore, is often the key consideration in categorizing a statement as fact or opinion." (citing *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 254 (1991))).  Courts also consider whether the language is used in a precise sense or whether it is figurative, loose or hyperbolic. *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 226 (2d Cir. 1985).  A statement that is pure opinion cannot be libelous and therefore cannot be subject to a private action for damages. *Galanova v. Safir*, 29 N.Y.S.3d 459, 138 A.D.3d 686, 687 (2d Dep't 2016).

A review of the complained of blog posts demonstrates that defendant was expressing his opinion regarding the appropriate conditions in which the Japanese term for "doctor" may be used.  The language in each of the complained of blog posts meets the definition of loose rhetoric.  The posts each mention that plaintiff is a doctor of podiatry.  However, the posts go on to state that plaintiff should not use the word

"doctor" to describe herself without a further description. He further indicates that the same word should not be used for veterinarians or dentists. Clearly, the word "doctor" in this context does not have a precise meaning. The blog posts, on their face, provide contradictory information about the meaning of the word doctor (i.e. "she is a doctor, but she is not a doctor"). If statements are subject to ambiguous meanings they are exactly the type of loose statements that cannot be defamatory. *Penn Warranty Corp. v. DiGiovanni*, 10 Misc.3d 998, 1005 (N.Y. Cty. 2005) citing *Dillon v. City of New York*, 261 A.D.2d 34 (1st Dep't 1999).

Furthermore, the context of these statements is in a blog in which defendant discusses use of the word "doctor" not just by plaintiff but within certain publications, with respect to lists of "doctors" and in the context of another podiatrist. It is clear to the common reader that, taken in context, the posts are pure opinion. New York courts have found that posts on the internet are particularly susceptible to being perceived as opinion as opposed to fact. Because of the open nature of the internet, and the proliferation of blogs posting opinion, courts are cognizant of the fact that readers of blogs are more likely to assume that information posted in blogs is likely to be opinion rather than fact. *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 86 A.D.3d 32, 43 (1st Dep't 2011) (readers give less credence to allegedly defamatory statements on internet forums, message boards and blogs); *Versaci v. Richie*, 816 N.Y.S.2d 350, 30 A.D.3d 648, 649 (3d Dep't 2006) (reader of an online forum in which people post their opinions about any matter would not understand statements on that forum to be fact as opposed to opinion).

When determining if a statement is one of fact or opinion, courts should look at the entirety of the statement, as well as the forum in which it is published, to determine

the overall context. *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985).  The context of the posts herein make it clear that defendant is expressing his opinion and his concern over the fact that Japanese people may misunderstand the use of the word "doctor," without qualification, as it relates to podiatrists and others.  Courts must construe the meaning of a statement in the context of the entire publication in which it appears, not merely within a paragraph or chapter containing the statement. *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014).

The blog posts contain numerous questions indicating that defendant is not expressing facts with respect to plaintiff.  For example, the blog asks "…did she get a PhD…?"  The final blog referenced asks "Based on this doctor (plaintiff), a doctor is a doctor.  Is this true?  Then dentists and vets are also considered doctors, right?"  These statements are indicative of the fact that defendant is expressing an opinion and not that these are hard facts.  As these blogs were all published on the internet, in a forum that is generally considered to be based on opinion, and that most readers would believe the statements to be the opinion of the author, the blogs are pure opinion and cannot be defamatory.

One of the allegedly defamatory statements was included in a letter to plaintiff's prior counsel.  That statement, though not posted on the internet, still clearly falls into the opinion category.  On its face, the content is questioning as opposed to stating conclusive facts, "Is it okay to call herself [plaintiff] (sic) a podiatric doctor?  Using non-approved word could mislead and give the wrong idea."  This quote clearly demonstrates that defendant is not making a statement of fact regarding plaintiff but is instead attempting to

clear up what could be a miscommunication to the general public, and specifically to Japanese speakers.

The content of the statements, along with the forum in which they were posted, clearly establish that the content of the complained of blog posts represents defendant's opinion, not stated facts. The average reader would understand these posts to be expressions of opinion. For that reason, they cannot be defamatory and this action must be dismissed.

### C. Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress

The elements of an action for intentional infliction of emotional distress in New York are: 1) extreme and outrageous conduct; 2) intent to cause severe emotional distress or a substantial disregard of the probability of causing severe emotional distress; 3) causation; and 4) severe emotional distress. *Chanko v. American Broadcasting Cos., Inc.*, 27 N.Y.3d 46, 56 (2016) *citing Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). In order for conduct to be actionable under this claim the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id. quoting Howell*, 81 N.Y.2d at 122, quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983).

The element of outrageousness is most susceptible to determination as a matter of law and is designed to "filter out petty complaints and assure that the emotional distress is genuine." *Id. citations omitted.* This requirement is extremely rigorous, to such a degree that the New York Court of Appeals has stated that every case of intentional infliction of emotional distress that has been reviewed by the court has failed "because

15

the alleged conduct was not sufficiently outrageous." *Howell*, 81 N.Y.2d at 122.   The

cases in which conduct has been found to not reach the level of outrageousness are

myriad. *Borawski v. Abulafia*, 985 N.Y.S.2d 284, 117 A.D.3d 662, 664-665 (2d Dep't

2014) (making defamatory statements about plaintiff's professional conduct not

sufficiently outrageous conduct to sustain a cause of action for intentional infliction of

emotional distress); *Dillon v. City of New York*, 704 N.Y.S.2d 1, 261 A.D.2d 34 (1st Dep't

1999) (a description of the plaintiff using foul and profane language could not perpetrate

so great a harm as to support a claim of negligent infliction of emotional distress);

*Harville v. Lowville Cent. School Dist.*, 667 N.Y.S.2d 175, 245 A.D.2d 1106 (4th Dep't

1997 (a teacher calling a 13-year-old student a "Polish Nazi" was not so outrageous in

character to support a claim); *Chanko, supra* (holding that broadcasting secretly obtained

video of a woman watching her husband die was not outrageous conduct); *Howell, supra*

(holding that publication of a woman's photograph, without her consent, taken while she

was a psychiatric patient, did not remotely approach outrageous conduct); *Brown v. Sears

Roebuck & Co.*, 746 N.Y.S.2d 141, 297 A.D.2d 205, 212 (1st Dep't 2002) (giving false

information to the police about an individual not considered outrageous conduct).

Even assuming that the allegations in the Verified Complaint are true, and

affording plaintiff every possible inference, the allegations do not reach the extremely

high standard required to establish outrageous conduct.  The allegations are that

defendant published four blog posts and wrote a single letter to plaintiff's prior counsel in

which he questioned plaintiff's use of the word "doctor" to refer to herself.  Defendant

also discussed the difference between podiatry school and medical school and made a

comment that podiatrists are more in the category of dentists and veterinarians.  None of

these statements is outrageous or extreme in any way. Even assuming, *arguendo*, that the statements are false, which they are not, they are simply not outrageous.

Plaintiff has also failed to allege sufficiently that defendant acted with any intent or recklessness. In fact, defendant responded reasonably to plaintiff's prior counsel and stated clearly that he is "not trying to insult Dr. Hayashi." Interestingly, he referred to her as "Dr." in his letter to plaintiff's counsel. There is no reasonable reading of the allegations of this complaint that would indicate defendant's behavior was outrageous in any way. As such, the cause of action for intentional infliction of emotional distress should be dismissed.

## **Conclusion**

For the foregoing reasons, defendant Shunzo Ozawa respectfully requests that this motion be granted in its entirety and plaintiff's Verified Complaint be dismissed; together with such further and other relief as the Court deems just and proper.

Dated: New York, New York
      April 2, 2018

                          HERZFELD & RUBIN, P.C.
                          Attorneys for Defendant

By: _____
                      Brian T. Carr (BC-2519)
                      125 Broad Street
                      New York, New York 10004
                      (212) 471-8500
                      bcarr@herzfeld-rubin.com