UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| Mika Hayashi, |
| Plaintiff, |
| —v— |
| Shunzo Ozawa, |
| Defendant. |



MAR 2 8 2019

17-cv-2558 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

This case arises out of a series of posts made by Defendant on his personal blog, as well as one email that he sent to Plaintiff's former counsel. In these posts, written in Japanese, Defendant repeatedly states that it is misleading for Plaintiff, a doctor of podiatric medicine, to represent herself as a doctor. In response, Plaintiff has sued for libel and intentional infliction of emotional distress. Defendant has moved to dismiss both claims and for the reasons given below, the Court grants Defendant's motion in full.

I. **Background**

The Plaintiff, Mika Hayashi, is a podiatrist licensed and practicing in the State of New York and domiciled in New Jersey. Amended Complaint ("Amend. Compl."), Dkt. No. 14, ¶¶ 6-7. The Defendant, Shunzo Ozawa, is a dentist licensed and practicing in the State of New York and a New York citizen. Amend. Compl. ¶ 14. Both parties are of Japanese heritage and fluent in Japanese. Amend. Compl. ¶¶ 7, 14. The Defendant operates a blog site, available at "ozawashikany.jugem.jp" and "ozawany.jugem.jp," which is written primarily in Japanese and is

1

a personal journal of the Defendant's thoughts dating back to April 2007. Amend. Compl. ¶¶ 15-17, 19. Links to the blog site are featured prominently in the Defendant's advertisements in the Japanese-language free newspapers Japion and Daily Sun New York. Amend. Compl. ¶¶ 17-18; Exhibit E to Amend. Compl. ("Exhibit E"), Dkt. No. 14-5.

Beginning on September 17, 2016, the Defendant began posting a series of blog posts about the use of the term "doctor" in Japanese, and the Plaintiff's use of the term in particular. Amend. Compl. ¶¶ 20-26. Defendant's allegedly offending posts focus on whether Plaintiff, a doctor of podiatry, may refer to herself as a doctor. In one post, Defendant writes that for Plaintiff to refer to herself as a doctor is "perjury" and "it might even be considered fraud." Exhibit F to Amend. Compl., Dkt. No. 14-6, at 1. Defendant questions whether Plaintiff "has the least bit of decency (common sense)[.]" *Id.* Other posts speculate whether Plaintiff's use of the term doctor to refer to herself is actually "perjury" or her "own misapprehension, the lowest level of self-perception." Exhibit G to Amend. Compl., Dkt. No. 14-7, at 1. Plaintiff points to seven allegedly offending posts, translations of which are all appended to the Amended Complaint. *See* Ex. F; Ex. G; Exhibit I to Amend. Compl., Dkt. No. 14-9; Exhibit J to Amend. Compl., Dkt. No. 14-10; Exhibit L to Amend. Compl., Dkt. No. Dkt. No.14-12.; Exhibit M to Amend. Compl., Dkt. No. 14-13. Plaintiff also appended a copy of an email sent by Defendant to Plaintiff's prior counsel. Exhibit H to Amend. Compl., Dkt. No. 14-8. For the purposes of this motion, Defendant does not contest the accuracy of the translations Plaintiff has provided. Def. Mot. at 9 n.2.

In response to these blog posts and their alleged effect on her business, Plaintiff filed a complaint alleging defamation on April 10, 2017. *See* Complaint, Dkt. No. 1. On August 1, 2017, in response to Defendant's first motion to dismiss, *see* Dkt. No. 11, Plaintiff filed an

amended complaint. Amend. Compl. Defendant then filed a motion to dismiss under Rules 12(b)(6) and 12(b)(7). Dkt. No. 28. On August 18, 2017, Plaintiff filed a motion for a preliminary injunction. Dkt. No. 16. On March 19, 2018, the Court denied Plaintiff's request for a preliminary injunction but determined that it had subject matter jurisdiction over the case. Dkt. No. 51. The Court accordingly administratively denied Defendant's motion to dismiss, with leave to re-file a motion to dismiss raising non-jurisdictional arguments. Dkt. No. 51. On April 2, 2018, Defendant filed the current motion to dismiss Plaintiff's Amended Complaint for failure to state a claim under Rule 12(b)(6). Dkt. No. 54.

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim achieves "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and if plaintiffs cannot "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed," *Twombly*, 550 U.S. at 570. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). When considering a motion to dismiss under Rule 12(b)(6), "a court must accept as true all of the [factual] allegations contained in [the] complaint[.]" *Iqbal*, 556 U.S. at 678. However, the court should not accept legal conclusions as

true: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. Discussion

The Court will first address Plaintiff's libel claim, then her claim for intentional infliction of emotional distress.

### A. Plaintiff Has Failed to State a Claim for Libel

The insistent theme of Defendant's allegedly defamatory statements is that it is misleading for Plaintiff to call herself a "doctor" because she is a doctor of podiatry, rather than a medical doctor (M.D.). In one post, Defendant writes that Plaintiff has engaged in "perjury" and what "might even be considered fraud." Ex. F at 1. Plaintiff argues that these statements and others accusing her of being misleading are libel.

Under New York law, "[t]o state a claim for defamation, a complaint must allege '(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34 (1st Dep't 2014)). Accusations of serious criminal activity or statements that tend to injure another in her profession can certainly be actionable as defamation, and can constitute defamation *per se*. *See Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y.1992). However, Defendant argues that his posts and email were not defamatory because: (1) the statements made were substantially true and (2) the statements made constitute protected opinion. For the reasons given below, the Court agrees with the latter argument and thus finds it unnecessary to reach the former.

4

### 1. New York Law Affords Absolute Protection to Pure Opinion

"Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008) (citing cases). As a result, even accusations of criminal behavior are not actionable if, understood in context, they are opinion rather than fact. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 154–56 (1993) ("[T]here is simply no special rule of law making criminal slurs actionable regardless of whether they are asserted as opinion or fact."); *see also Torain v. Liu*, 279 F. App'x 46, 47 n.2 (2d Cir. 2008) (even with accusations of criminal conduct, the inquiry remains whether they would be understood in context as expressions of opinion or fact). Accordingly, courts in this circuit have consistently found that statements that an individual has engaged in serious criminal conduct are not actionable if they would be understood as opinion. *See Torain v. Liu*, No. 06-cv-5851 (GBD), 2007 WL 2331073, at *3–4 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 279 F. App'x 46 (2d Cir. 2008) (accusation of pedophilia was not defamation when viewed in context it was opinion); *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 312–14 (S.D.N.Y. 2017) (same for accusation of "extortion, manipulation, fraud, and deceit") *Fedak v. YIMBY, Inc.*, No. 17-cv-8825 (KPF), 2018 WL 6697963, at *6-7 (S.D.N.Y. Dec. 20, 2018) (same for fraud accusation); *see also Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014) ("[T]he epithets . . . 'crooks or morons' . . . are hyperbole and therefore not actionable opinion."); *Adelson v. Harris*, 774 F.3d 803, 807 (2d Cir. 2014) (same for description of money as "dirty" and "tainted"). Therefore, if Defendant's statements are protected opinion, they will not be actionable.

The distinction between fact and opinion is "a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean" and is appropriately raised at the motion to dismiss stage. *Davis v. Boeheim*, 24 N.Y.3d

5

262, 269 (2014) (internal quotation marks omitted). It is true that the Second Circuit has indicated that if a translation from a foreign language is disputed *and* the relevant social context is primarily foreign, it may be preferable to avoid unnecessarily deciding this issue on a motion to dismiss if possible. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402–04 (2d Cir. 2006) (remanding case for determination of motion to dismiss on other grounds). Nonetheless, the Second Circuit did note in *Kirch* that "[w]e do not mean to suggest that we cannot decide the defamation issue" since "[c]ases are routinely brought to American courts even though the evidence about relevant occurrences or transactions is in a foreign language." *Kirch*, 449 F.3d at 403-04. At this stage of the litigation the translation is not disputed and Plaintiff expressly focuses her claims "on the natural consequences of Dr. Ozawa's remarks here in the tristate area." Pl. Mot. Opp. at 5, 6 n.7. The Court finds that it is therefore appropriate to resolve this question as a matter of law, as the Second Circuit has in other defamation cases involving translations. *See Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219 (2d Cir.1985).

The New York Court of Appeals has provided a set of "factors to be considered" when determining if statements would be understood by a reader as opinion or fact:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact[.]

*Mann v. Abel*, 10 N.Y.3d 271, 276 (2008) (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995). This "analysis should not consist of a mechanical enumeration of each factor adopted" but rather "should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'" *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000) (quoting *Brian*, 87 N.Y.2d at 51). This includes looking to the tone of

the communication, its apparent purpose, and the setting in which it was made. *Id.* at 153-54. The Court applies this holistic approach to the statements here, looking first to Defendant's blog posts, then to his email to Plaintiff's former counsel.

### 2. An Ordinary Reader Would Interpret Defendant's Blog Posts as Expressions of Opinion

In applying this standard to Defendant's blog posts, the Court will examine the three factors of the Court of Appeals' analysis in turn. For the reasons below, and accepting the facts of the Amended Complaint as true and drawing all available inferences in Plaintiff's favor, the Court concludes that an ordinary reader would understand Defendant's blog posts as expressions of opinion, not statements of fact.

#### a. Defendant's Posts Are Not Susceptible to a Readily Understandable Meaning

As to the first factor of the Court of Appeals' test, Defendant's posts are not susceptible to a precise, readily understandable meaning for several reasons. First, these posts are fraught with imprecision and ambiguity. Defendant's posts veer back-and-forth as to whether it is criminal or fraudulent for Plaintiff to refer to herself as a doctor. In his September 17, 2016, post Defendant writes that for Plaintiff to refer to herself as a doctor is "perjury. It might even be considered fraud[.]" Ex. F at 1. Yet right above this, in reference to a different doctor of podiatry referring to himself as a doctor of medicine, Defendant writes "it *can* be considered fraud, perjury." *Id.* (emphasis added). Other times, Defendant appears more speculative: "Is this the reckless action of this paper? Or, is it the perjury of these two people? Or, is this the individuals' own misapprehension, the lowest level of self-perception?" Ex. G at 1. Then, in his February 2, 2017, post, Defendant indicates that it may in fact be acceptable and legal for Plaintiff to refer to herself as a doctor: "Compromising a bit, if one makes one's own translation

7

into Japanese of the English title, Doctor of Podiatric Medicine . . . it turns into 'doctor of podiatry.' It's probably fine for a podiatry doctor to be called 'doctor' in the world of podiatry. But [you] should note that s/he is not a doctor in a medical association." Ex. I at 2 (brackets added by translator). Finally, on June 3, 2017, Defendant falls somewhere in the middle, writing that whether or not a doctor of podiatry can refer to herself as a doctor in Japanese, "the problem is that if a podiatry doctor claims to be a doctor or person with a doctorate or the like, this could cause misunderstanding for Japanese people in general[.]" Ex. L at 2. Defendant's see-sawing produces considerable ambiguity over what, in fact, he is saying about Plaintiff's use of the term doctor to refer to herself. This renders his statements less amenable to a "precise meaning which is readily understood." *Mann*, 10 N.Y.3d at 276.

Second, the imprecision and ambiguity of Defendant's posts is compounded by the incoherent language in some of the undisputed translations Plaintiff has provided. For example, in the sentence immediately before the language about perjury in the September 17 post, Defendant writes: "Even if she is a 'doctor' (doctor), <u>she is not a doctor</u>." Ex. F at 1 (underlining in original). Further confusing things, in one post, Defendant writes "[t]here is a podiatry department, but actually, the correct translation is podiatry," Ex. F at 2, only later to write that "[s]tating on one's own that there's a podiatry department is perjury, so be careful," Ex. G at 2. To an ordinary reader, these muddled sentences would be far from readily understandable.

Third, while some of the allegedly offending words are amenable to specific meanings on their own, viewed in the proper context they would be understood as being used loosely or hyperbolically. For example, "perjury" does have a specific meaning. Yet it would strike a reasonable observer as highly exaggerated, if not absurd, to claim that writing in a newspaper that there is such a thing as a podiatry department is perjury, which even in its common language

8

definition involves a voluntary violation of an "oath or vow." *See* Perjury, Merriam-Webster Online Dictionary (March 26, 2019), https://www.merriam-webster.com/dictionary/perjury (defining perjury as "the voluntary violation of an oath or vow either by swearing to what is untrue or by omission to do what has been promised under oath"). As a result, an ordinary reader would be likely to understand that the word perjury was "being used 'in a loose figurative sense[.]'" *Treppel v. Biovail Corp.*, No. 03 CIV. 3002 (PKL), 2004 WL 2339759, at *12 (S.D.N.Y. Oct. 15, 2004) (quoting *Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 284 (1974)). Therefore, viewed in this context, Defendant's allegedly offending words would be understood as loose and hyperbolic. For the above reasons, the first factor in the Court of Appeals' test indicates that Defendant's statements would be viewed as opinion.

### b. Because They Reference the Facts On Which They Are Based, Defendant's Posts Are Protected, Pure Opinion

As to the second factor of the Court of Appeals' test, although some parts of Defendant's posts are capable of being proven true or false, this by itself does not preclude his statements from qualifying as opinion. *See, e.g., Torati v. Hodak*, 147 A.D.3d 502, 503 (1st Dep't 2017) (though the statements in question "contain elements of both fact and opinion, when viewed in context" a reasonable reader would find they were expressions of opinion). Indeed, "sifting through a communication for the purpose of isolating and identifying assertions of fact," is not the correct inquiry. *Brian*, 87 N.Y.2d at 51. Instead, the statements should be approached holistically and within their full context. *Id.* Viewed in context, Defendant's allegedly defamatory statements fall into the category of "pure opinion," which is opinion "accompanied by a recitation of the facts upon which it is based[.]" *Davis*, 24 N.Y.3d at 269; *see also Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). Because Defendant does

9

not indicate that his statements are based on undisclosed facts to which the listener is not privy, they do not cross over into actionable "mixed opinion." *See, e.g., Torain*, 2007 WL 2331073, at *3–4. Therefore, the fact that Defendant's posts lay out their purported factual basis does not render them unprotected.

Plaintiff's reliance on *Enigma Software* is misplaced. Plaintiff cites *Enigma Software* for the proposition that "if the predicate facts are disclosed but are false, such that the disparity between the stated facts and the truth would cause a reader to question the opinion's validity, the opinion may be an actionable 'defamatory opinion[ ].'" *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016) (citing *Silsdorf v. Levine*, 59 N.Y.2d 8, 15 (1983)). As an initial matter, the idea of "defamatory opinion," drawn from a 1983 Court of Appeals decision, is in tension with subsequent Court of Appeals decisions, which held that "if a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable." *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) (citing *Gross*, 82 N.Y.2d at 154); *see also Celle*, 209 F.3d at 178 ("expressions of 'pure' opinion receive absolute constitutional protection under the New York Constitution" (citing *Immuno AG. v. Moor–Jankowski*, 77 N.Y.2d 235 (1991)). Nonetheless, it is not necessary to resolve this tension here, as Plaintiff does not allege that a number of the predicate facts on which Defendant bases his opinions are false. These underlying underlying include that there is a distinction between a doctor of podiatry and a medical doctor (M.D.), Amend. Compl. ¶ 21, 34, that the title of "doctor" is not recognized for podiatrists in Japan and that podiatry itself is not recognized in Japan, Pl. Mot. Opp. at 7, or that podiatry is not taught in medical schools. Plaintiff does, of course, vigorously dispute the accuracy of Defendant's claim that because of those facts and others, it is misleading for Plaintiff to call herself a doctor. Yet

10

for the reasons given elsewhere in this Court's analysis, those statements are best understood as expressions of opinion, not fact. Therefore, even though Defendant's posts include predicate facts, viewed as a whole, his statements are non-actionable pure opinion.

### c. Viewed in Their Full Context, Defendant's Statements on His Blog Would Be Understood by an Ordinary Reader as Opinion

As to the third factor of the Court of Appeals' test, the full context of the blog on which Defendant's statements appear and the surrounding circumstances would signal to a reader that she was reading opinion, not fact. First, the style, nature, and tone of Defendant's posts indicate that they would be taken as emotional expressions of opinion. *See Flamm*, 201 F.3d at 154 (courts are to consider "the whole content of a communication as well as its tone"). Hyperbole is not actionable as defamation. *See, e.g., Chau v. Lewis*, 771 F.3d at 129. Furthermore, statements that are rambling, heated, or speculative are more likely to be understood as opinion. *See Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 41-42 (1st Dep't 2011) (even "apparent statements of fact" can qualify as protected opinion when made in a context of "epithets, fiery rhetoric or hyperbole" (quoting *Steinhilber*, 68 N.Y. 2d at 294)); *Versaci v. Richie*, 30 A.D.3d 648, 648-49 (3rd Dep't 2006) (a reasonable reader would give little credence to "rambling commentary" posted online on a message board); *see also Brian*, 87 N.Y.2d at 53 (communication was more likely to be viewed as opinion when it included "speculation and seemingly tenuous inferences"). The tenor of Defendant's blog posts often escalates into the hyperbolic. *See, e.g.*, Ex. F at 2 ("If one has the least bit of decency (common sense), isn't it true that she should be publishing <u>only a title with the same meaning</u> given in English to the title 'doctor'?" (underlining in original)); *id.* ("I've thought so many times that I should report this to the authorities, but well, what shall I do?"); Ex. G at 2 ("Stating on one's own that there's a podiatry department is perjury, so be careful."); *id.* at 1 ("[I]s this the individuals' own

11

misapprehension, the lowest level of self-perception?"). Defendant's excessive use of underlining and red font, along with strings of rhetorical questions, reinforces the impression that his posts are more an exercise in rhetorical hyperbole than a presentation of facts. *See, e.g., Sandals Resorts*, 86 A.D.3d at 42 (statements would be read as opinion in part because they were "replete with rhetorical questions"). There are also omitted words and mistakes in the posts that make them difficult to parse, ungrammatical, and less likely to be taken seriously. *See, e.g.*, Ex. G at 2 ("Translator's note: There appear to be several typos in the original text"); Ex. K at 1 (Defendant apologizing for grammatical and typographical mistakes, writing: "Even though I had realized that I drank too much, in the middle of drinking, it was too late [to fix*] the mistakes, when I noticed them." (brackets added by translator)). Finally, Defendant's admission in his February 13, 2017, post that he drinks too much when he posts would reinforce a reasonable reader's sense that she was reading heated rhetoric, not fact. Ex. K at 1 ("I am a kind of coward, so I drink alcohol first, then I write . . . When I'm tired, I relax by drinking alcohol, then I become quick-witted. The ideas come out naturally . . . This is my confession while I'm a little tipsy. Please forgive me."). Reading these messy, pugnacious posts would leave a reasonable reader with the impression of emotional invective, not a sober presentation of fact.

Second, the platform on which these statements were made further supports the conclusion that an ordinary reader would understand them as opinion. Courts have noted that statements made online in blogs or forum boards are more likely to be interpreted as opinion. *Biro v. Conde Nast*, No. 11-cv-4442 (JPO), 2014 WL 4851901, at *4 (S.D.N.Y. Sept. 30, 2014), *aff'd in part*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015) (conclusion that statements would be viewed as opinion, not fact, "is buttressed by the context of the publications in question: an online website that was essentially a blog"); *Bellavia Blatt &*

*Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015), *aff'd*, 670 F. App'x 731 (2d Cir. 2016) ("New York courts have consistently protected statements made in online forums as statements of opinion rather than fact." (citing cases)). It is true that in the modern media landscape, internet publications and blogs can engage in serious, fact-based reporting. Yet Defendant's blog was "a personal journal" that "contains no content about the defendant or his dental practice" but does "include criticisms of various professionals, including dentists and doctors." Amend. Compl. ¶ 19. Defendant's hyperbolic and rhetorical tone is also consistent with the "freewheeling, anything-goes writing style" that is more characteristic of opinionated blogs than newspapers or other traditional publications. *Bellavia*, 151 F. Supp. 3d at 295 (quoting *Sandals Resorts*, 86 A.D.3d at 42). This was therefore not a "fact-laden context" such as a non-profit's published attorney referral directory, *Flamm*, 201 F.3d at 154, or the news section of a well-regarded publication that purported to ground its findings in "thorough investigation," *Gross*, 82 N.Y.2d at 156. Nor were these statements made by a purportedly "expert staff member who can be trusted to give correct and understandable answers" on a supposedly "tightly regulated" forum board. *Enigma Software*, 194 F. Supp. 3d at 285 (internal quotation marks omitted). Instead, the context here is more akin to a letter to the editor, remarks made at a contentious public hearing, or a recorded telephone message "calculated to punish a 'scab' in the aftermath of an acrimonious labor conflict." *Brian*, 87 N.Y.2d at 52 (citing cases). Therefore, the broader context of Defendant's personal blog further supports the conclusion that his posts would be read as opinion.

For the reasons above, the three factors of the Court of Appeals' test indicate that Defendant's statements on his blog would be understood as non-actionable opinion. The Court therefore holds that Plaintiff has failed to state a claim as to Defendant's statements on his blog.

### 3. Defendant's Email to Plaintiff's Prior Counsel is Not Susceptible to a Defamatory Connotation

As to Defendant's email to Plaintiff's prior counsel, Plaintiff has failed to state a claim for defamation. As an initial matter, Plaintiff is not entirely clear on whether she is claiming that the email itself is defamatory, or simply evidence of the defamatory nature of Defendant's posts. However, since Plaintiff alleges that Defendant's remarks to Plaintiff's former counsel are "entirely false and absolutely incorrect" and that she has been harmed not just by Defendant's blog posts but by "other defamatory remarks," Amend. Compl. ¶¶ 35-37, out of an abundance of caution the Court considers whether Plaintiff has stated a claim as to Defendant's email.

Drawing all available inferences in Plaintiff's favor, she has failed to state a claim for defamation based on Defendant's email to her former counsel. A court may determine that statements are not defamation if, as a matter of law, they are not "reasonably susceptible of a defamatory connotation." *Albert v. Loksen*, 239 F.3d 256, 267 (2d Cir. 2001) ("Whether the contested statements are reasonably susceptible of a defamatory connotation is in the first instance a legal determination for the court" (quoting *Weiner v. Doubleday & Co.*, 74 N.Y.2d 586, 592 (1989)). "A statement is defamatory if it exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or ... induce[s] an evil opinion of one in the minds of right-thinking persons, and ... deprive[s] one of their confidence and friendly intercourse in society.'" *Chau*, 771 F.3d at 127 (quoting *Kimmerle v. N.Y. Evening Journal, Inc.*, 262 N.Y. 99, 102 (1933)). Thus, slights that simply "wound one's pride . . . offend or insult . . . are not the stuff of defamation." *Id.* Here, Plaintiff does not point to anything in the email that "vilifies or exposes [her] to shame 'in the minds of right-thinking persons.'" *Id.* (quoting *Kimmerle*, 262 N.Y. at 102). Defendant does not accuse Plaintiff of any crime and even admits that Plaintiff's use of the word doctor is "an

acceptable translation" based on the dictionary and that "I assume an individual who is a podiatric physician or surgeon with a title of DPM can be called as a physician." Ex. H at 1, 3. Defendant's email concludes with "I am not trying to insult Dr. Hayashi." *Id.* at 4. The furthest Defendant goes is to state that: "I think describing with non-official words will mislead patients into wrong concepts" and that "I am only asking [of Plaintiff] the corrections (to my definitions) [sic]. Otherwise, the patients get the wrong information." *Id.* at 2, 4. Defendant's email is a request that Plaintiff adopt what he recognizes are *his* definitions, while acknowledging that Plaintiff's use of doctor is not technically incorrect. *Id.* This is not reasonably susceptible to a defamatory connotation. And even if the email were susceptible to such a connotation, Defendant's concession that Plaintiff's use of the term is "an acceptable translation" makes clear that he is putting forward arguments for his own opinion—what he calls "my definitions"—of the proper use of the term doctor. Thus, this email would also be entitled to protection as opinion. *See, e.g., Davis*, 24 N.Y.3d at 269. Therefore, the Court holds that Plaintiff has failed to state a claim for defamation as to Defendant's email.

For the above reasons, Plaintiff's libel claim is dismissed in its entirety. Plaintiff has already had the opportunity to amend her complaint once in the face of Defendant's first motion to dismiss, which fully briefed Defendant's argument that his posts constitute protected opinion. Dkt. No. 11; Dkt. No. 11-5, at 14-17. At the time, the Court cautioned that this was Plaintiff's opportunity "to cure any defects that had been made apparent by the Defendant's briefing" and that failure to do so could constitute waiver of her right to seek further amendment. Dkt. No. 13 (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (leaving "unaltered the grounds on which denial of leave to amend has long been held

15

proper, such as undue delay, bad faith, dilatory motive, and futility")). As a result, this dismissal is with prejudice.[1]

### B. Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress

The Court now turns to Plaintiff's second claim, which alleges intentional infliction of emotional distress. Under New York law, "intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)). As to the first element, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 56 (2016) (quoting *Howell*, 81 N.Y.2d at 121). The Court of Appeals has made clear that this is an "exceedingly high legal standard" and that of the elements, outrageousness is "most susceptible to a determination as a matter of law." *Id.* at 57.

Drawing all available inferences in Plaintiff's favor, Defendant's alleged conduct falls well short of this demanding standard. For example, in *Chanko*, a claim of intentional inflection of emotional distress was brought by family members of a deceased hospital patient based on the Defendants "filming [the] patient's medical treatment and death in a hospital emergency room without consent, and then broadcasting a portion of the footage as part of a documentary series[.]" *Chanko*, 27 N.Y.3d at 50. The Court of Appeals made clear that "the broadcasting of a

---

[1] After briefing on this motion was complete, Plaintiff filed a letter requesting a conference based on more recent posts by Defendant that allegedly had similar content to the ones attached to Plaintiff's amended complaint. Dkt. No. 67. As this motion resolves the case, Plaintiff's request for a conference is denied.

recording of a patient's last moments of life without consent . . . would likely be considered reprehensible by most people, and we do not condone it." *Id.* at 57-58. However, this was "not so extreme and outrageous to satisfy our exceedingly high legal standard." *Id.* The court then went on to approvingly cite other state court decisions finding that outrageousness was not found when a television station "displayed recognizable images of rape victims after repeatedly assuring them that they would not be identifiable" or when a newspaper "published a picture of a person in a psychiatric facility—thereby informing the world that the photographed person was a patient at such a facility—even though the residents were photographed by someone trespassing on facility grounds and the facility had expressly requested that the newspaper not publish pictures of residents." *Id.* at 58 (citing cases). The fact that the conduct in those cases was far more extreme than Defendant's blog posts, yet still did not meet the exceedingly high standard, points unambiguously to dismissal.

Plaintiff seeks to rely on cases decided by lower state courts—specifically *Flatley v. Hartmann*, 138 A.D.2d 345 (2d Dep't. 1988), and *Halio v. Lurie*, 15 A.D.2d 62 (2d Dep't. 1961)—that were decided prior to the Court of Appeals' 1993 decision in *Howell* that articulated its current approach to such claims, *Howell*, 81 N.Y.2d at 121-22. As this Court has previously noted, the Second Circuit pointed to *Flatley* and *Hartmann* in particular as cases that are at risk of being inconsistent with the *Howell* standard. *Sesto v. Slaine*, 171 F. Supp. 3d 194, 202, n.2 (S.D.N.Y. 2016) (citing *Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996)). At the very least, as this Court indicated in *Sesto*, these cases are non-binding and potentially distinguishable. *Id.* Therefore, these cases present no grounds for this Court to depart from the Court of Appeals' clear direction that the standard in such cases is rarely met. *Chanko*, 27 N.Y.3d at 57 (noting that the Court of Appeals in *Howell* commented that of "the intentional

infliction of emotional distress claims considered by this Court, *every one* has failed because the alleged conduct was not sufficiently outrageous." (emphasis in original)).

The Court therefore dismisses Plaintiff's claim for intentional infliction of emotional distress. As above, Plaintiff already had the opportunity to amend once in the face of similar arguments in Defendant's first motion to dismiss, Dkt. No. 11-5, at 17-19, and was cautioned by the Court that this was her opportunity to cure defects in her claim raised by Defendant's motion, Dkt. No. 13. Accordingly, this dismissal is also with prejudice. *See Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 190.

## IV. Conclusion

For the reasons given above, the Court hereby dismisses Plaintiff's Amended Complaint, Dkt. No. 14, in its entirety and with prejudice. This resolves docket items numbers 54 and 67. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

Dated: March  , 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge